IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CEPHALON, INC and UNIVERSITY OF UTAH RESEARCH FOUNDATION,<br><br>　　　　　　　Plaintiffs,<br>　　v<br><br>BARR LABORATORIES, INC,<br><br>　　　　　　　Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No 05-29-JJF<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION TO DISMISS COUNTERCLAIM**

OF COUNSEL

William F Lee
David B Bassett
Peter J Kolovos
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Frederick L Cottrell, III (#2555)
(Cottrell@rlf com)
Chad M Shandler (#3796)
(Shandler@rlf com)
Richards Layton & Finger, P A
P O Box 551
One Rodney Square
Wilmington, Delaware 19899-0551
(302) 651-7700

Attorneys for Plaintiffs Cephalon, Inc
and University of Utah Research Foundation

Dated: April 6, 2005

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT ................................................................................................................... 2

    I. BARR'S INTERPRETATION OF THE LEGISLATIVE INTENT BEHIND
       THE MMA IS INCORRECT ............................................................................ 2

    II. UNDER THE PLAIN LANGUAGE OF THE MMA, BARR IS NOT
        ENTITLED TO BRING COUNTERCLAIMS ................................................. 4

CONCLUSION ............................................................................................................... 6

RLF1-2860948-1

# TABLE OF CITATIONS

## FEDERAL CASES

*Dr. Reddy's Lab., Ltd. v. Pfizer, Inc.*, C.A. No. 03-CV-726(JAP), 2003 WL 21638254
(D.N.J. July 8, 2003) ............................................................................................................ 4

*Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982) ...................................................... 5

*Reid v. Dep't of Commerce*, 703 F.2d 277 (Fed. Cir. 1986) .................................................... 5

*Teva Pharm. USA, Inc. v. Pfizer, Inc.*, 395 F.3d 1324 (Fed. Cir. 2005) ................................... 6

*Torpharm, Inc. v. Pfizer, Inc.*, C.A. No. 03-990-SLR, 2004 WL 1465756
(D. Del. June 28, 2004) .................................................................................................... 3, 6

## FEDERAL STATUTES

21 U.S.C. § 355(j)(5)(C)(i) ................................................................................................... 3, 5

21 U.S.C. § 355(j)(5)(C)(i)(I) .................................................................................................. 4

21 U.S.C. § 355(j)(5)(C)(ii) .................................................................................................. 3, 5

## INTRODUCTION

Despite its accusatory tone, Barr Laboratories Inc.'s ("Barr") opposition to Plaintiffs' Motion to Dismiss Barr's Counterclaim has no foundation in either the plain language of the relevant statutes or the legislative record underlying them. First, Barr misinterprets the legislative intent behind the passage of the Medicare Prescription Drug, Improvement, and Modernization Act, Pub. L. 108-173, 117 Stat. 2066 (2003) ("MMA"). As set forth below, Congress intended through the MMA to strike a balance between the interests of patentees and generic drug companies by continuing to recognize the importance of encouraging research and innovation, the same intent which underlays the original 1984 Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act. There is nothing in the legislative record that indicates, as Barr suggests, that Congress actively sought to tip the balance towards generic companies at the expense of patentees through passage of the MMA.

Second, and more importantly, the plain language of the statute allows an ANDA applicant to bring a declaratory judgment counterclaim only in the absence of a patentee's infringement action. Indeed, what is most striking about Barr's opposition is that it fails to directly address the very statutory language that it claims to interpret. This glaring omission suggests that Barr is unable to find any support for its argument in the language of the statute itself. This Court should enforce the plain language of the MMA and grant the Plaintiffs' Motion to Dismiss Barr's Counterclaim.

1

## ARGUMENT

### I. BARR'S INTERPRETATION OF THE LEGISLATIVE INTENT BEHIND THE MMA IS INCORRECT.

Barr takes a markedly one-sided view of the legislative history of the MMA in advancing its claim that the MMA was designed to expand the rights of generic companies at the expense of patentees. The legislative history of the MMA, as well as that of the original 1984 Hatch-Waxman Amendments, make clear that through enactment of this legislation Congress intended to balance the interests of patentees and generic companies, not to tip the scales in favor of one over the other. For instance, the day after the MMA was signed into law, Senator Orrin Hatch noted that, in passing this legislation, it was critical "to observe the principle of balance contained in the original 1984 law so that both research based firms and generic firms receive new incentives that will allow them to continue to produce and distribute the products that the American public deserves." 149 Cong. Rec. S16104 (daily ed. Dec. 9, 2003) (statement of Sen. Hatch).

Senator John McCain also acknowledged the vital importance that the statutory language of the MMA maintain this balance: "This legislation is not an attempt to jeopardize the patent rights of innovative companies, nor does it seek to provide an unfair advantage to generic manufacturers. Rather, the intent of this amendment is to strike a balance between these two interests so that we can close the loopholes that allow some companies to engage in anti-competitive actions by unfairly prolonging patents or eliminating fair competition." 149 Cong. Rec. S8190 (daily ed. June 19, 2003) (statement of Sen. McCain). Another senator observed that "[b]oth of these goals—bringing generics to the market as soon as possible, and continuing to support companies in their research and development efforts—are vital, and I believe this

2

amendment strikes a solid balance between the two." 149 Cong. Rec. S8195 (daily ed. June 19, 2003) (statement of Sen. Kohl)

Because this legislation is relatively new, federal courts have had little opportunity to interpret the statutory language at issue in Plaintiffs' Motion to Dismiss. However, the few courts that have addressed the statute have also recognized (consistent with the legislative intent reflected above) that the MMA was intended to protect the interests of patentees as well as generic companies *See, e.g., Torpharm, Inc. v. Pfizer, Inc.*, C.A. No. 03-990-SLR, 2004 WL 1465756, at *8 (D. Del. June 28, 2004) (noting that one of the purposes of the MMA is "to ensure that a patent holder has full opportunity to consider an ANDA and decide whether to file an infringement action prior to being forced to stand in defense in a declaratory judgment action.")[1]

There can be no question that the MMA includes several new provisions that have the effect of facilitating and accelerating market entry by generic drug manufacturers. However, the very fact that Congress laid out specific provisions to assist generic companies in the MMA shows that Congress did not intend to give generics carte blanche to pursue claims against patentees. There is nothing in the language of the statute or the legislative record that provides any basis for believing that Congress intended to give generic companies rights that were not expressly granted, or even alluded to, in the statute itself.

The reading that Barr advocates makes even less sense when one examines the purpose of the new MMA provisions relevant to this case, namely 21 U.S.C. § 355(j)(5)(C)(i)-(ii), which are laid out in full in Plaintiffs' Motion to Dismiss. These new provisions were designed to correct a perceived imbalance in the original Hatch-Waxman Amendments. These Amendments often

---

[1] All unreported cases are attached alphabetically at Exhibit A hereto.

3

were interpreted such that generic companies were left without the ability to obtain certainty as to their potential patent exposure if patentees did not bring suit within 45 days of being notified that a generic company had filed an ANDA. In particular, courts had ruled that if a patentee did not file a lawsuit against a generic company within 45 days of receipt of a paragraph IV notice letter, the generic company could not have a reasonable apprehension of litigation, and therefore no subject matter jurisdiction existed for a declaratory judgment action by a generic company against a patentee. *See, e.g., Dr. Reddy's Lab., Ltd. v. Pfizer, Inc.*, C.A. No 03-CV-726(JAP), 2003 WL 21638254, at *7 (D.N.J. July 8, 2003) (finding no "reasonable apprehension of litigation" and dismissing generic company's declaratory judgment action where the patentee did not bring a lawsuit within 45 days of receiving notice of the generic company's ANDA). Generic companies in this situation could not obtain a judicial resolution of their potential exposure to patent infringement claims before bringing their product to market, and thus had no choice but to expose themselves to potential liability if they did decide to enter the market. The MMA removed this obstacle by expressly permitting an ANDA applicant to file a declaratory judgment action to obtain patent certainty if the patentee chose not to bring a lawsuit within the 45-day period. 21 U.S.C. § 355(j)(5)(C)(i)(I). However, in a case like this one, where the patentee has brought a lawsuit within the 45-day period, this remedy is not available.[2]

## II.  UNDER THE PLAIN LANGUAGE OF THE MMA, BARR IS NOT ENTITLED TO BRING ITS COUNTERCLAIMS.

Despite its repeated reliance on Congress's supposed "intent," Barr is unable to avoid the plain language of the statute, which clearly states that "[n]o action may be brought under section 2201 of Title 28" by an ANDA applicant except where a patentee has not filed an infringement

---

[2] Moreover, Barr will suffer no prejudice if the Court dismisses its counterclaim, as Barr has asserted as affirmative defenses the same non-infringement and invalidity claims it seeks to also assert by counterclaim.

4

lawsuit within a 45-day period. 21 U.S.C. § 355(j)(5)(C)(i)(I). Though Barr argues that the Plaintiffs' reading of the statute is "nonsensical and unsupported," Barr never addresses the language of the statute itself or explains why its express terms do not compel the result the Plaintiffs' suggest.

Barr seeks to evade the plain meaning of the statute by asserting that the provisions cited by the Plaintiffs have no relevance in this case. For example, Barr makes much of the fact that the declaratory judgment action provision is entitled "Declaratory judgment *absent* infringement action," 21 U.S.C. § 355(j)(5)(C)(i) (emphasis supplied by Barr), as if to suggest that the provisions cited in Plaintiffs' Motion to Dismiss have no relevance to a situation where there is an infringement action pending. However, Barr pointedly ignores the fact that the very next provision, 21 U.S.C. § 355(j)(5)(C)(ii) – also relied upon by the Plaintiffs – is entitled "Counterclaim to infringement action," and thus speaks directly to the situation in this case. As discussed in Plaintiffs' Motion to Dismiss, this section defines a narrow exception to the preconditions described in § 355(j)(5)(C)(i) which does not encompass Barr's counterclaim. When these two sections are read together, it is clear that Congress fully addressed the circumstances under which an ANDA applicant such as Barr may bring claims or counterclaims against an innovator company in the context of ANDA litigation, both where the patentee has filed an infringement action within the 45-day window, and where it has not.[3]

A careful review of the plain language of the statute demonstrates that Barr may not maintain its counterclaim after enactment of the MMA. In addition, Barr has failed to point to any evidence in the legislative record that should compel a different reading of the statutory

---

[3] Although the statutory language here is clear, to the extent that the express terms of the MMA may appear inconsistent with Congressional intent, it is Congress that should resolve any ambiguities, not the federal courts. *See Reid v. Dep't of Commerce*, 703 F.2d 277, 284 (Fed. Cir. 1986) ("'The remedy for any dissatisfaction with the results in a particular case lie with Congress' and not this court, 'Congress may amend the statute; we may not.'" (*quoting Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 576 (1982)).

language Barr attempts to bolster its argument by pointing out that this case meets the Federal Circuit's two-part inquiry for determining whether an actual case or controversy exists That may be so, but the two-part test has no relevance here; recent cases examining the MMA have made it clear that this test is one that parties must satisfy in addition to the legislative grant of jurisdiction *See, e.g., Teva Pharm USA, Inc v Pfizer, Inc*, 395 F 3d 1324, 1338 (Fed Cir 2005); *see also Torpharm*, 2004 WL 1465756, at *7 The two-part test can only narrow the jurisdiction given by Congress, not expand it

## CONCLUSION

For these reasons, Barr has demonstrated no reasonable basis for opposing the present motion Therefore, this Court should grant Plaintiffs' Motion to Dismiss Barr's Counterclaim in its entirety

Frederick L. Cottrell, III (#2555)
(Cottrell@rlf.com)
Chad M Shandler (#3796)
(Shandler@rlf.com)
Richards Layton & Finger, P A
P O Box 551
One Rodney Square
Wilmington, Delaware 19899-0551
(302) 651-7700

Attorneys for Plaintiffs Cephalon, Inc
and University of Utah Research Foundation

OF COUNSEL:
William F Lee
David B Bassett
Peter J Kolovos
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Dated: April 6, 2005

6

RLF1-2860948-1