# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CEPHALON, INC. and<br>UNIVERSITY OF UTAH<br>RESEARCH FOUNDATION,<br><br>   Plaintiffs,<br>v.<br><br>BARR LABORATORIES, INC.,<br><br>   Defendant. | Civil Action No. 05-29-JJF |

**PLAINTIFF CEPHALON, INC'S. RESPONSES
TO DEFENDANT BARR LABORATORIES INC.'S
FIRST SET OF RULE 33 INTERROGATORIES (NOS. 1-12)**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, plaintiff Cephalon, Inc. ("Cephalon") hereby objects and responds to defendant Barr Laboratories, Inc.'s ("Barr") First Set of Rule 33 Interrogatories.

**GENERAL OBJECTIONS AND RESPONSES**

1. Cephalon objects to each interrogatory to the extent it seeks information that is protected from disclosure by the work product doctrine, the attorney-client privilege, or by any other applicable privilege or discovery immunity (collectively, "privileged"). The inadvertent supplying of any privileged information or communications shall not constitute a waiver of such protection.

2. Cephalon objects to each interrogatory, and to Barr's Definitions and Instructions, to the extent they purport to impose upon Cephalon any obligation beyond those imposed by the Federal Rules of Civil Procedure and this Court's Local Rules, including but not

1

limited to any interrogatory that exceeds the scope of Federal Rules of Civil Procedure 26 and 33.

3. Cephalon objects to each interrogatory to the extent it seeks information not relevant to the claims or defenses of any party in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

4. Cephalon objects to each interrogatory to the extent it seeks information for any period of time after the commencement of this action, on the grounds that such information is neither relevant to the issues in this litigation nor reasonably calculated to lead to the discovery of admissible evidence.

5. Cephalon objects to Barr's definition of "Cephalon" as vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence, to the extent the definition purports to include any person or entity other than Cephalon, Inc. or its officers, directors, or employees. Accordingly, in responding to these interrogatories, Cephalon interprets "Cephalon" to mean only Cephalon, Inc. and its officers, directors, or employees.

6. Cephalon objects to Barr's definition of "Anesta" as vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence, to the extent the definition purports to include any person or entity other than Anesta Corporation or its officers, directors, or employees. Accordingly, in responding to these interrogatories, Cephalon interprets "Anesta" to mean only Anesta Corporation and its officers, directors, or employees.

7. Cephalon objects to Barr's definition of "Foundation" as vague, overly broad and not reasonably calculated to lead to the discovery of admissible evidence, to the extent the

definition purports to include any person or entity other than the University of Utah Research Foundation or its officers, directors, or employees. Accordingly, in responding to these interrogatories, Cephalon interprets "Foundation" to mean only University of Utah Research Foundation and its officers, directors, or employees.

8. Cephalon objects to each interrogatory to the extent it seeks information that is not known or available to Cephalon.

9. Neither these General Objections and Responses, nor the Specific Responses set forth below, are an admission relative to the existence of any information sought, to the relevance or admissibility of any response, or to the truth or accuracy of any statement or characterization contained in any particular interrogatory.

10. Unless otherwise indicated, Cephalon will not provide any information encompassed by the foregoing objections.

11. The Specific Responses set forth below are based upon information now available to Cephalon after having made a diligent search. Cephalon has responded to these interrogatories to the best of its present ability. However, fact investigation and trial preparation are continuing, and Cephalon reserves the right to revise, correct, add to, supplement, modify or clarify its responses pursuant to Federal Rule 26(e) in any manner it deems appropriate. Moreover, these responses are made without prejudice to Cephalon's right to present at trial additional evidence or witnesses as may be discovered or produced.

## SPECIFIC RESPONSES

Specifically incorporating each of its General Objections and Responses into each and every response below, regardless of whether specifically referenced therein, and without waiving

said objections and responses, Cephalon responds to each specifically numbered Interrogatory as follows.

**Interrogatory No. 1**

Provide a claim chart setting forth Cephalon's construction of each of the claims of the Patent-in-Suit, including a detailed explanation of its asserted construction for these patent claims and support for that explanation, and identifying at least three persons at Cephalon with the most knowledge concerning Cephalon's asserted claim construction.

**Response to Interrogatory No. 1**

Cephalon objects to this interrogatory as overly broad and unduly burdensome, to the extent that it calls for an identification of the "three persons at Cephalon with the most knowledge concerning Cephalon's asserted claim construction." Cephalon also objects to this interrogatory as premature. The Scheduling Order entered in this action calls for the parties to propose a claim construction briefing schedule to the Court by June 1, 2005. Discovery in this case has recently commenced, and the parties have yet to produce documents or things such as extrinsic evidence that may be relevant to claim construction.

Subject to and without waiving its objections, Cephalon is willing to meet and confer with Barr to negotiate a joint schedule for the exchange of the parties' preliminary construction of claim terms in advance of June 1, 2005.

**Interrogatory No. 2**

Identify each claim of the Patent-in-Suit that Cephalon asserts is or would be infringed by Barr's ANDA Products and/or the manufacture, use, sale and/or offer for sale of Barr's ANDA Products, providing for each such patent claim a claim chart including, but not limited to, a detailed explanation as to why each element of each claim is present in Barr's ANDA and/or Barr's ANDA Products, and identifying at least three persons at Cephalon with the most knowledge concerning such infringement claims.

**Response to Interrogatory No. 2**

Cephalon objects to this interrogatory as overly broad and unduly burdensome, to the extent that it calls for an identification of the "three persons at Cephalon with the most knowledge concerning such infringement claims."

Subject to, and without waiving its general or specific objections, Cephalon states that by letters dated December 7, 2004, December 20, 2004, and December 21, 2004 (the "Barr Notice Letters"), Barr notified Cephalon and the Foundation that Barr had submitted ANDA No. 77-312 (the "Barr ANDA") to the FDA under Section 505(j) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. § 355(j)), seeking approval to engage in the commercial manufacture, use, and sale of a generic version of Actiq® (the "Barr ANDA Products") before the expiration date of U.S. Patent No. 4,863,737 (the "'737 Patent"). By filing ANDA No. 77-312, Barr necessarily represented to the FDA that the Barr ANDA Products have the same active ingredient as Actiq®, have the same route of administration, dosage form, and strengths as Actiq®, are bioequivalent to Actiq®, and have the same or substantially the same proposed labeling as Actiq®. In the Barr Notice Letters, Barr notified Cephalon that the Barr ANDA contained a "paragraph IV certification." Barr's submission of ANDA No. 77-312 to obtain approval to engage in the commercial manufacture, use, offer to sell, or sale of the Barr ANDA Products, prior to the expiration of the '737 Patent, constitutes infringement of one or more of the valid claims of the '737 Patent under 35 U.S.C. § 271(e)(2)(A).

In addition, given that discovery in this case only recently commenced, Cephalon further objects to this interrogatory as premature. Cephalon will, however, supplement its response to this interrogatory with appropriate claim charts and/or other materials as discovery progresses.

5

USIDOCS 5049945v1

**Interrogatory No. 3**

Identify all facts and evidence supporting the allegations in Cephalon's Complaint that Barr's ANDA Products infringe one or more claims of the Patent-in-Suit, including any documents, communications (whether oral or written), or things containing such facts or evidence, and identify all persons involved in Cephalon's pre-suit investigations regarding its infringement allegations against Barr.

**Response to Interrogatory No. 3**

Cephalon objects to this interrogatory to the extent that it seeks information that is protected from disclosure by the work product doctrine, the attorney-client privilege, or any other applicable privilege or discovery immunity. Cephalon further objects to this interrogatory as overly broad and unduly burdensome, to the extent that it calls for an identification of "all facts and evidence supporting the allegations in Cephalon's Complaint that Barr's ANDA Products infringe one or more claims of the Patent-in-Suit, including any documents, communications (whether oral or written), or things containing such facts or evidence." In addition, Cephalon objects to this interrogatory to the extent that it calls for an identification of "all persons involved in Cephalon's pre-suit investigations regarding its infringement allegations against Barr," on the ground that such information is neither relevant to the claims or defenses of any party to this litigation, nor reasonably likely to lead to the discovery of admissible evidence.

Subject to, and without waiving its general or specific objections, Cephalon incorporates by reference its response to Barr's Interrogatory No. 2. In addition, in accordance with Rule 33(d), Cephalon and/or the Foundation will produce non-privileged documents from which information responsive to this interrogatory may be derived or ascertained after a Protective Order has been signed by the parties and entered by the Court.

**Interrogatory No. 4**

Identify the source and custodian of all data, test results, examples, tables, formulations, and preparations appearing in the Patent-in-Suit and/or the patent application from which the Patent-in-Suit issued.

**Response to Interrogatory No. 4**

Cephalon objects to this interrogatory as overbroad, unduly burdensome, vague, and ambiguous to the extent that it seeks the source and custodian of "all data, test results, examples, formulations, and preparations." Cephalon further objects to this interrogatory on the ground that certain requested information is neither relevant to the claims or defenses of any party to this litigation, nor reasonably likely to lead to the discovery of admissible evidence.

Subject to, and without waiving its general or specific objections, Cephalon states that the following individuals may be sources and/or custodians of data, test results, examples, tables, formulations, and preparations appearing in the Patent-in-Suit: named inventors Theodore H. Stanley and Brian Hague; Bill Moeller, formerly at Anesta Corporation; attorneys from the law firm of Workman, Nydegger & Jensen; and attorney Michael Krieger, from the law firm of Kirton & McConkie.

Further, in accordance with Rule 33(d), Cephalon and/or the Foundation will produce non-privileged documents from which information responsive to this interrogatory may be derived or ascertained after a Protective Order has been signed by the parties and entered by the Court.

Fact investigation and trial preparation are continuing, and Cephalon reserves its right to supplement this response.

**Interrogatory No. 5**

Identify all documents and/or information that the Inventors, including their representatives and persons under their direction or control, and Cephalon considered in connection with the development of the invention allegedly described in the Patent-in-Suit and/or in connection with the prosecution of the Patent-in-Suit, regardless of whether such documents or information were cited to the PTO.

**Response to Interrogatory No. 5**

Cephalon objects to this interrogatory as overbroad, unduly burdensome, vague, and ambiguous to the extent that it seeks "all documents and/or information that the Inventors, including their representatives and persons under their direction or control, and Cephalon considered in connection with the development of the invention allegedly described in the Patent-in-Suit and/or in connection with the prosecution of the Patent-in-Suit." Cephalon further objects to this interrogatory on the ground that certain requested information is neither relevant to the claims or defenses of any party to this litigation, nor reasonably likely to lead to the discovery of admissible evidence.

Subject to, and without waiving its general or specific objections, in accordance with Rule 33(d), Cephalon and/or the Foundation will produce non-privileged documents from which information responsive to this interrogatory may be derived or ascertained after a Protective Order has been signed by the parties and entered by the Court.

Fact investigation and trial preparation are continuing, and Cephalon reserves its right to supplement this response.

**Interrogatory No. 6**

Identify the date that the invention allegedly described in the Patent-in-Suit was first conceived, and for the date, identify with particularity the documentary evidence supporting that date and all persons with any knowledge relating to that date.

**Response to Interrogatory No. 6**

Cephalon objects to this interrogatory as overly broad, unduly burdensome and premature. Cephalon further objects to this interrogatory to the extent that it seeks information that is protected from disclosure by the work product doctrine, the attorney-client privilege, or by any other applicable privilege or discovery immunity. In addition, Cephalon objects to this interrogatory to the extent that it calls for legal conclusions. Cephalon's present response, and

8

any supplemental response, is limited to the facts and evidence known or available to Cephalon at the time such response is made.

Subject to, and without waiving its general or specific objections, and based on information presently available, Cephalon states that the invention claimed in the Patent-in-Suit was conceived by the named inventors no later than June 8, 1987. Discovery in this case has only recently commenced, and Cephalon is continuing to investigate the circumstances of the conception and reduction to practice of the invention claimed in the Patent-in-Suit. Furthermore, pursuant to Rule 33(d), Cephalon and/or the Foundation will produce non-privileged documents from which information responsive to this interrogatory may be derived or ascertained after a Protective Order has been signed by the parties and entered by the Court.

Fact investigation and trial preparation are continuing, and Cephalon reserves its right to supplement this response.

**Interrogatory No. 7**

Identify the date that the invention allegedly described in the Patent-in-Suit was reduced to practice, including any acts of diligence, and identify with particularity the documentary evidence supporting that date and all persons with any knowledge relating to that date.

**Response to Interrogatory No. 7**

Cephalon objects to this interrogatory as overly broad, unduly burdensome and premature. Cephalon further objects to this interrogatory to the extent that it seeks information that is protected from disclosure by the work product doctrine, the attorney-client privilege, or by any other applicable privilege or discovery immunity. In addition, Cephalon objects to this interrogatory to the extent that it calls for legal conclusions. Cephalon's present response, and any supplemental response, is limited to the facts and evidence known or available to Cephalon at the time such response is made.

Subject to, and without waiving its general or specific objections, and based on information presently available, Cephalon states that the invention claimed in the Patent-in-Suit was reduced to practice by the named inventors no later than June 8, 1987. Discovery in this case has only recently commenced, and Cephalon is continuing to investigate the circumstances of the conception and reduction to practice of the invention claimed in the Patent-in-Suit. Furthermore, pursuant to Rule 33(d), Cephalon and/or the Foundation will produce non-privileged documents from which information responsive to this interrogatory may be derived or ascertained after a Protective Order has been signed by the parties and entered by the Court.

Fact investigation and trial preparation are continuing, and Cephalon reserves its right to supplement this response.

### Interrogatory No. 8

Describe the circumstances, including the dates, in which the subject matter claimed in the Patent-in-Suit was first offered for sale, first described in a printed publication anywhere in the world, and first publicly used in the United States.

### Response to Interrogatory No. 8

Cephalon objects to this interrogatory to the extent that it seeks information that is protected from disclosure by the work product doctrine, the attorney-client privilege, or by any other applicable privilege or discovery immunity. In addition, Cephalon objects to this interrogatory to the extent it calls for legal conclusions. Cephalon also objects to this interrogatory as premature to the extent that it seeks expert discovery, given that expert discovery has not yet commenced.

Cephalon further objects to this interrogatory as overbroad, unduly burdensome and neither relevant to the claims or defenses of any party, nor reasonably calculated to lead to the discovery of admissible evidence to the extent it calls for a response to a defense that has not been articulated in this case. The Patent-in-Suit is presumed to be valid and enforceable. Absent

10

any contention that any claim of the Patent-in-Suit is invalid due to a 102(b) prior "public use" or "on-sale bar," Cephalon has no burden to describe when "the Patent-in-Suit was first offered for sale, first described in a printed publication anywhere in the world, and first publicly used in the United States." Until such contention is made, this interrogatory is premature.

**Interrogatory No. 9**

Identify each person who participated in any way (*e.g.*, providing technical input, reviewing or commenting on communications from the PTO, preparing and filing papers in the PTO, participating in interviews with examiners) in preparation and/or prosecution of (a) the Patent-in-Suit; (b) the application from which the Patent-in-Suit issued; (c) any applications from which the Patent-in-Suit claims priority; (d) foreign counterparts of the Patent-in-Suit and the application(s) from which the foreign counterpart patents issued; and (e) foreign counterparts of any applications from which the Patent-in-Suit claims priority and the application(s) from which the foreign counterpart patents issued, and describe in detail the nature and extent of participation by each such person.

**Response to Interrogatory No. 9**

Cephalon objects to this interrogatory as overbroad, unduly burdensome, vague, and ambiguous to the extent that it calls for Cephalon to "identify each person" and "describe in detail the nature and extent of participation by each such person." Cephalon further objects to this interrogatory to the extent that it seeks information that is neither relevant to the claims or defenses of any party to this litigation, nor reasonably likely to lead to the discovery of admissible evidence. Cephalon further objects to this interrogatory to the extent that it seeks information that is protected from disclosure by the work product doctrine, the attorney-client privilege, or any other applicable privilege or discovery immunity.

Subject to, and without waiving its general or specific objections, Cephalon states that Theodore H. Stanley, a named inventor of the Patent-in-Suit, was involved in filing the application that led to the Patent-in-Suit, the prosecution of the Patent-in-Suit, the prosecution of related patents, and the prosecution of foreign counterparts. Mr. Stanley's involvement included reviewing drafts, providing technical advice, and reviewing and commenting on communications

11

from the PTO and foreign patent offices. Brian Hague, also a named inventor of the Patent-in-Suit, also reviewed drafts and other documents, and provided technical input in connection with the prosecution of the Patent-in-Suit and related applications. Bill Moeller, formerly at Anesta Corporation, may have reviewed certain documents associated with the prosecution of the Patent-in-Suit. Attorney Allen R. Jensen, formerly from the law firm of Workman, Nydegger & Jensen, was responsible for the prosecution of the Patent-in-Suit before the PTO. Attorney Michael Krieger, from the law firm of Kirton & McConkie, was also responsible for prosecution of the Patent-in-Suit before the PTO and related applications.

Furthermore, pursuant to Rule 33(d), Cephalon and/or the Foundation will produce non-privileged documents from which information responsive to this interrogatory may be derived or ascertained after a Protective Order has been signed by the parties and entered by the Court.

Fact investigation and trial preparation are continuing, and Cephalon reserves its right to supplement this response.

### Interrogatory No. 10

Identify each person involved in, or with knowledge of, any research and development of the invention allegedly described in the Patent-in-Suit, and/or any products or formulations allegedly covered by one or more of the claims of the Patent-in-Suit, and for each person describe the nature of their involvement and the subject matter of their knowledge.

### Response to Interrogatory No. 10

Cephalon objects to this interrogatory as overbroad, unduly burdensome, vague, and ambiguous to the extent that it to the extent it calls for Cephalon to "identify each person" and "describe in detail the nature of their involvement and the subject-matter of their knowledge." and extent of participation by each such person." Cephalon further objects to this interrogatory on the ground that certain requested information is neither relevant to the claims or defenses of any party to this litigation, nor reasonably likely to lead to the discovery of admissible evidence.

12

Subject to, and without waiving its general or specific objections, Cephalon states that Theodore H. Stanley and Brian Hague, the named inventors of the Patent-in-Suit, were actively involved in all aspects of the research and development of the invention described in the Patent-in-Suit.

Furthermore, pursuant to Rule 33(d), Cephalon and/or the Foundation will produce non-privileged documents from which information responsive to this interrogatory may be derived or ascertained after a Protective Order has been signed by the parties and entered by the Court.

Fact investigation and trial preparation are continuing, and Cephalon reserves its right to supplement this response.

**Interrogatory No. 11**

Identify all persons that Cephalon may call as a witness at trial, and for each such person, identify the subject matter about which the witness will offer testimony.

**Response to Interrogatory No. 11**

Cephalon objects to this interrogatory as premature, in that it seeks information that will be encompassed in the Court's Pretrial Order, which, together with the Federal Rules of Civil Procedure, will set forth the procedures for the disclosure of fact witnesses.

Subject to and without waiving its general or specific objections, Cephalon incorporates by reference its and Barr's Rule 26 Initial Disclosures.

**Interrogatory No. 12**

Identify all persons that Cephalon may call as an expert at trial, and for each such person, identify the subject matter about which the expert will offer testimony.

**Response to Interrogatory No. 12**

Cephalon objects to this interrogatory as premature, in that it seeks information that will be encompassed in the Court's Pretrial Order, which, together with the Federal Rules of Civil Procedure, will set forth the procedures for the disclosure of expert witnesses.

AS TO MATTERS KNOWN OR AVAILABLE TO CEPHALON:

I, Dennis Coleman, declare that I am an employee of Cephalon, Inc., which is the plaintiff in the above-entitled action. I have been authorized to make this verification on its behalf.

I have read the foregoing Responses to Defendant Barr Laboratories, Inc.'s First Set of Rule 33 Interrogatories ("Responses"). To the extent that I have personal knowledge, the facts stated in the Responses are true and correct. Insofar as the facts contained in the Responses are based on a composite of information from different sources known or available to Cephalon, I am informed and believe that they are true and correct

Signed and sworn to under the pains and penalties of perjury upon information and belief on this 27 day of April, 2005.

*/s/ Dennis L. Coleman*
Dennis Coleman

AS TO OBJECTIONS:

*/s/ Peter Kolovos (DE)*
Fredrick L. Cottrell III (#2555)
Chad M. Shandler (#3796)
Richards Layton & Finger, P.A.
P.O. Box 551
One Rodney Square
Wilmington, Delaware 19899-0551
(302) 651-7700

~~OF COUNSEL:~~ Admitted Pro Hac Vice:

William F. Lee
David B. Bassett
Peter Kolovos
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
(617) 526-6000

Dated: April 27 2005

14

USIDOCS 5049945v1

TOTAL P.02

## CERTIFICATE OF SERVICE

I, Daniel M. Esrick, hereby certify that on April 27, 2005, I caused a true and accurate copy of the foregoing document to be served, via Federal Express overnight delivery, on the following:

>Michael K. Nutter, Esq.
>Winston & Strawn
>35 West Wacker Drive
>Chicago, IL  60601-9703

Daniel M. Esrick