# RICHARDS, LAYTON & FINGER
A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL, III
DIRECTOR

DIRECT DIAL NUMBER
302-651-7509
COTTRELL@RLF.COM

July 20, 2005

**VIA E-FILE AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

Re: *Cephalon Inc., et al v. Barr Laboratories*
C.A. 05-0029-JJF

Dear Judge Farnan:

Pursuant to Local Rule 7.1.2(c), I write to bring to the Court's attention the Federal Circuit's recent *en banc* decision in Phillips v. AWH Corp., No. 03-1269 (Fed. Cir. July 12, 2005) (copy attached) and its applicability to this action.

Cephalon filed its Opening Brief On Claim Construction For U.S. Patent No. 4,863,737 ("Brief") on July 8, 2005. At that time, as noted in Footnote 3 of Cephalon's Brief, the much-anticipated Phillips decision had not yet issued. Several days later, on July 12, the Federal Circuit issued its decision. This letter briefly addresses the effect of Phillips on the law of claim construction as discussed in Cephalon's Brief.

Much of the law of claim construction remains unchanged in the wake of Phillips. Interpreting a patent claim is still primarily a matter of reading the language of the claim itself, the specification, and the prosecution history. This intrinsic evidence is still the most significant source for determining the legally operative meaning of disputed claim language. (Br. at 2-3; Phillips, slip op. at 12-18.) Claim construction analysis begins with the language of the claims themselves, and there is still a presumption that claim terms carry the full scope of their ordinary and plain meaning. (Br. at 3; Phillips, slip op. at 9.) The words of claims are still interpreted from the perspective of a person of ordinary skill in the art, who is deemed to read the words used in the patent documents (including the specification) with an understanding of their meaning in the relevant field. (Br. at 3; Phillips, slip op. at 9-10.)

Claims must still be construed so as to be consistent with the specification, of which they are a part. (Br. at 4; Phillips, slip op. at 12-16.) Limitations generally may not be imported from

The Honorable Joseph J. Farnan, Jr.
July 20, 2005
Page 2

the specification into the claims, even where the specification describes only a single embodiment or a limited number of embodiments. (Br. at 4; Phillips, slip op. at 28-29.)

A patentee may use the specification to impart a specialized meaning to a term that is different from its ordinary meaning. (Br. at 5; Phillips, slip op. at 16.) The prosecution history may reveal pertinent evidence concerning construction of the claims, including evidence of a disclaimer of the full breadth of claim scope. (Br. at 5-6; Phillips slip op. at 17.) The Phillips decision notes, however, that "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Phillips, slip op. at 17 (citations omitted).

The Phillips decision has clarified certain aspects of the law of claim construction in important ways. In Texas Digital Sys., Inc. v. Telgenix, Inc., 308 F.3d 1193 (Fed. Cir. 2002) and several subsequent cases, various panels of the Federal Circuit suggested that district court judges should consult dictionaries and treatises to determine the ordinary meaning of claim terms *before* looking at the specification, and to use the specification only for the limited purpose of determining whether the specification excluded one or more aspects of the ordinary meaning. Phillips, slip op. at 23. In Phillips, the Federal Circuit has stated unequivocally that such an approach would be incorrect – the specification is "the single best guide to the meaning of a disputed term," and should not be assigned a limited role in claim construction. Id. at 24.

Yet the Phillips decision also says that "dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used both by our court and the Supreme Court in claim interpretation. ... [A] dictionary definition has the value of being an unbiased source 'accessible to the public in advance of litigation.'" Id. at 28 (citations omitted). Courts are still free to consult dictionaries and technical treatises, so long as such extrinsic evidence does not contradict any definition found in or ascertained by a reading of the specification and prosecution history. See id.

In sum, Phillips holds that "there is no magic formula or catechism for conducting claim construction. Nor is the court barred from considering any particular sources or required to analyze sources in any particular sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." Id. at 30-31. "For example, a judge who encounters a claim term while reading a patent might consult a general purpose or dictionary to begin to understand the meaning of the term, before reviewing the remainder of the patent to determine how the patentee has used the term. The sequence of steps used by the judge in consulting various sources is not important; what matters is for the court to attach the appropriate weight to be assigned to those sources in light of the statutes and policies that inform patent law." Id. at 31.

Phillips does not change the analysis or the conclusions presented to the Court in Cephalon's Brief. Cephalon's proposed constructions of the disputed terms are consistent with their plain meaning and the intrinsic evidence, which are still the most important factors for claim construction. No clear and unambiguous disclaimer of claim scope is evident in the

The Honorable Joseph J. Farnan, Jr.
July 20, 2005
Page 3


prosecution history. Therefore, Cephalon respectfully submits that its proposed constructions should be adopted by the Court.

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell, III

FLC,III/ps
Enclosure
cc:  Clerk of Court w/ enclosure (via e-file)
     Josy W. Ingersoll, Esquire w/ enclosure (via e-file and hand delivery)
     George C. Lombardi, Esquire, Esquire w/ enclosure (via facsimile)
     David B. Bassett, Esquire w/ enclosure (via facsimile)

RLF1-2901209-1