# EXHIBIT 7

ss's

**y Law Library**

*st Amendment Guide,*
Sack (G0-005B)

.), by Kenneth A. Plevan and

*ors, Dealers, and Artists* (2d ed.),
(G1-1028)

*y* Bruce P. Keller and

ffrey G. Sheldon (G6-2009)

*fting* (4th ed.),

*w,* by Richard L. Kirkpatrick

*aw Developments in the Federal*
56)

d.), by Ronald B. Hildreth

*Forms,* by Mark S. Holmes

-1. Pretty (G1-8901)

(3d ed.), by Siegrun D. Kane

· Henry H. Perritt, Jr. (G1-1021)

*roperty law topics are also available.*

ress
th Avenue
*N* York 10019
50-4754
321-0093
ll.edu

# Landis on Mechanics of Patent Claim Drafting

## *Fourth Edition*

### Robert C. Faber

Incorporating Release No. *5*

November 2001

(G9-0205)



**PLI**Press

Practising Law Institute
New York City

**G1-1025**

*This work is designed to provide practical and useful information on the subject matter covered. However, it is sold with the understanding that the publisher is not engaged in rendering legal, accounting or other professional services. If legal advice or other expert assistance is required, the services of a competent professional should be sought.*

Copyright © 1974, 1978, 1990, 1996, 1997, 1998, 1999, 2000, 2001 by Practising Law Institute. All rights reserved. Manufactured in the United States of America. No part of this book may be reproduced, stored in a retrieval system, or transmitted in any form by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of Practising Law Institute.

ISBN 0-87224-096-7

Library of Congress Card Number: 00-110710

# Landis on
# Mechanics of Patent
# Claim Drafting

## *Fourth Edition*

# PLI Press's
## Intellectual Property Law Library

*Advertising and Commercial Speech: A First Amendment Guide,*
by P. Cameron DeVore and Robert D. Sack (G0-005B)

*Advertising Compliance Handbook* (2d ed.), by Kenneth A. Plevan and
Miriam L. Siroky (G6-2007)

*Art Law: The Guide for Collectors, Investors, Dealers, and Artists* (2d ed.),
by Ralph E. Lerner and Judith Bresler (G1-1028)

*Copyright Law: A Practitioner's Guide,* by Bruce P. Keller and
Jeffrey P. Cunard (G1-9508)

*How to Write a Patent Application,* by Jeffrey G. Sheldon (G6-2009)

*Landis on Mechanics of Patent Claim Drafting* (4th ed.),
by Robert C. Faber (G1-1025)

*Likelihood of Confusion in Trademark Law,* by Richard L. Kirkpatrick
(G1-1024)

*2001 Federal Circuit Yearbook: Patent Law Developments in the Federal
Circuit,* by Jeffrey G. Sheldon (G1-1036)

*Patent Law: A Practitioner's Guide* (3d ed.), by Ronald B. Hildreth
(G1-1923)

*Patent Licensing: Strategy, Negotiation, Forms,* by Mark S. Holmes
(G0-00JO)

*Patent Litigation,* edited by Laurence H. Pretty (G1-8901)

*Trademark Law: A Practitioner's Guide* (3d ed.), by Siegrun D. Kane
(G1-1029)

*Trade Secrets: A Practitioner's Guide,* by Henry H. Perritt, Jr. (G1-1021)

*PLI course handbooks on intellectual property law topics are also available.
Please ask for a catalog.*

**PLI Press
810 Seventh Avenue
New York, New York 10019
(800) 260-4754
fax: (800) 321-0093
www.pli.edu**

*:nt Claim Drafting*

:reby (specification: "hammer";

a drawing with the application
standing of the subject matter
(a) provides that "the drawing
vention specified in the claims."
ianufacture, or other inventions
istration in a drawing, it must be
ed boxes, etc., may be used if the
here an element is not shown in
1 a claim. Where the element is
ly recited in the claim, the spec-
it indicate the presence of the el-
ild be amended to add such
ification, drawings, and claims

a claim after the application has
pon new matter, i.e., elements
sclosure.[5.4]

ples of lack of support have in-

is not described at all in the de-

iarts;

e claims;

:lear which of several elements
by a word in the claim.

iagram disclosures in electrical
puter programs and software).
illed in the art could make and
experimentation."[6] In theory,
asses and types of inventions—
ut the problems most frequent-
ts, particularly block diagram,
particularly, disclosures con-

) 298 (C.C.P.A. 1974).

cerned with computer software. But block diagrams can also cause
"best mode problems" (under 35 U.S.C. § 112).[7]

**Summary**

*Have clear and unambiguous support in the detailed description
for all words and phrases in the claim, so that anyone can under-
stand how the claim reads on the description. Also, all structures
described in the claim must be illustrated in the drawing, even old
or conventional things.*

## § 19 Naming the Elements

It is good practice to analyze the structure and select the essential
elements to be claimed, with whatever scope is desired, before start-
ing to write a claim. The elements must be assigned names, such as
base, container, legs, and means for oscillating in claim 1 (section 14).

The exact name selected for each element is often not critical, as
long as the claim drafter is not mistaken. While applicant in the-
ory has Humpty Dumpty's privilege of making words mean what
he wants them to mean, no term may be given a meaning repug-
nant to its usual meaning.[7.1] This rule is often stated as "applicant
may be his own lexicographer."[8] But this is still within limits. Of
course, the words used must have "clear support or antecedent
basis" in the specification, as mentioned in section 18. It is very
important to make all parts of the specification consistent with
the claims. When one wishes to impart a special meaning to a
word or phrase appearing in the claims, one should define that
word or phrase in the specification; for example, "As used in this
description and in the appended claims, the word
'_____' means '_____.'" However,
do not use ridiculous words such as "gizmo" or "widget.".

7. *See* Union Carbide Corp. v. Borg Warner Corp., 193 U.S.P.Q. (BNA) 1
    (6th Cir. 1977) (box labeled "extruder" held not proper to disclosed best
    mode of practicing process that would include step "extruding").
7.1. MPEP 2173.05(b).
8. MPEP 2173.01; Lear Siegler, Inc. v. Aerogrip Corp., 221 U.S.P.Q. (BNA)
    1025, 1031 (Fed. Cir. 1984); W.L. Gore Assocs. v. Garlock, Inc., 220
    U.S.P.Q. (BNA) 303, 316 (Fed. Cir. 1983).

§ 19                    *Mechanics of Patent Claim Drafting*

Frequently in mechanical apparatus, there are various expressions that could be used. For example, in claim 1, the base could have been called "a support," "a mounting plate," or the like. The container might have been designated "a box" or "a holder." The choices available frequently are descriptive names for an important function or purpose of the element named.

In most cases, the inventor or a mechanical dictionary can supply the precise name for a part in any specific embodiment. Appendix C contains a glossary of many mechanical terms commonly used in patents. For the broader claims, a generic word is usually needed. If no concrete generic name is available, often a home-made name indicating the function of the part may be used, such as "a rotary member" or "a holder," together with as much description of the part and its function as is necessary. Also "means" clauses are often used to describe an element broadly (see section 34).

New terms may be adopted by an applicant and often are used for new technology. If the claims, read in light of the specification, reasonably apprise those skilled in the art of the utilization and scope of the invention and if the language is as precise as the subject matter permits, § 112 is satisfied.[8.1]

Where practical, it is best to give two similar but different elements distinct names, such as "a holding member" and "a support member" even when in common usage those different elements might be identified by the same name. In other cases, this is not possible, in which case designations such as "first" or "second" should be used: "a first rotating member, . . . a second rotating member. . . ." Alternatively, the distinguishing adjective may refer to another element with which the named element is associated: "a base rotating member, . . . a connector rotating member. . . ." Thereafter the elements must be clearly and consistently named throughout all of the claims.

Use the same name for the element consistently throughout every claim. Do not change the noun. Do not change any adjectives. An adjective once used need not be repeated upon each subsequent appearance of its noun. But if the adjective has a subsequent

8.1. MPEP 2173.05(a); *In re* Burke, Inc., 786 F. Supp. 1537, 22 U.S.P.Q.2d (BNA) 1368, 1372 (C.D. Cal. 1992).

apparatus, there are various expres-
. . . example, in claim 1, the base could
" "a mounting plate," or the like. The
esignated "a box" or "a holder." The
are descriptive names for an impor-
he element named.

. or a mechanical dictionary can sup-
. . . in any specific embodiment. Ap-
sary of many mechanical terms
. . . the broader claims, a generic word
. . . generic name is available, often a
he function of the part may be used,
. "a holder," together with as much
its function as is necessary. Also
. . . d to describe an element broadly

. . . by an applicant and often are used
. . . s, read in light of the specification,
. . . d in the art of the utilization and
. . . language is as precise as the sub-
tisfied.[8.1]

. . . give two similar but different ele-
. . . holding member" and "a support
. . . n usage those different elements
. . . name. In other cases, this is not
. . . tions such as "first" or "second"
. . . g member, . . . a second rotating
. . . distinguishing adjective may refer
. . . the named element is associated:
. . . connector rotating member. . . ."
. clearly and consistently named

. . . nt consistently throughout every
. . . o not change any adjectives. An
. . . repeated upon each subsequent
. . . the adjective has a subsequent

. . . c., 786 F. Supp. 1537, 22 U.S.P.Q.2d
. . . ).

.

appearance, the word(s) used must remain the same. An item called
a "member," as in "connecting member," is always a "member,"
throughout all claims dependent upon the same claim in which the
element has been first named. In *Ex parte Oetiker*,[8.2] the Board of
Appeals and Interferences found a claim indefinite because an ele-
ment therein appeared to have been twice claimed, first as "a pan-
shaped depression means" and later as "a respective depression
means." Not only did the applicant change the name, he used the
indefinite article "a" twice. In a claim which does not depend from
one naming an element, another name may be used for the same ele-
ment. For example, in one chain of claims, the element may be the
broader "surface," while in another chain of claims, the element
may be the narrower "anvil" of which the surface is only a part.
Within each claim chain, the name of the element may never
change. The "member" cannot sometimes be an "element," that is,
it cannot be a "connecting element." An "element" would be a dif-
ferent claimed structure. If elements are named to suggest to the
reader that two of them are present when in fact there is only one,
this causes double inclusion of the twice-named element and the
resulting claim may be held to be indefinite.[8.3]

Often, an element is described not only by the noun, e.g.,
"member," but by adjectives which modify the noun, as "connect-
ing member" or "left side connecting member." After any feature
is first named completely with all its adjectives in a claim, subse-
quent mentions of the feature in that claim or in subsequent
dependent claims in the claim chain, following the first naming of
the element, must use the same noun for that element, but may use
fewer than all of the adjectives, thereafter calling it "member" or
"connecting member," without the other adjectives "left side."
The only limit on this freedom to drop adjectives is that there
must be no other element whose designation, when shortened
either to the noun alone or to the noun plus fewer than all of its
adjectives, would be identified by the same words, because that
would cause confusion as to which element was meant. Further, in
a chain of claims following the one that first uses an adjective, the

8.2. *Ex parte Oetiker*, 23 U.S.P.Q.2d (BNA) 1651, 1655 (Board of Appeals and
Interferences 1992).
8.3. MPEP 2173.05(o). *See* section 21.

§ 19                     *Mechanics of Patent Claim Drafting*

adjective cannot change. It may be deleted, as just noted, but not changed. If it is "an upper engaging member," it cannot later be "the upper holding member" or the "top engaging member."

For clarity in claim writing, I recommend avoiding use of first, second, third, etc., as the adjective which distinguishes one element from another. This usage is proper and so long as the adjective is used consistently, it cannot be considered ambiguous. However, sometimes a more descriptive adjective, descriptive, e.g., as to function or location or major characteristics (left side, elongate, etc.) might help the claim reader determine which element is being identified. On the other hand, the elements designated first, second, third, etc. may be identical in structure and function and may be distinguishable only by a nondescriptive adjective, or maybe using a descriptive adjective would, in the drafter's opinion, impermissibly narrow the scope of the recited element. Further, reciting only the adjectives first, second, etc. is useful where there are two or more ways of arranging elements and the claim writer wishes to encompass all of the ways, so that one location or arrangement would be first and the other would be second, without specifying which is which. Each element must always be described in such a distinctive manner as to clearly distinguish it from other similar or identical elements, as covered in section 16. Use the same terminology in the specification, as in the claims, even to at least once identifying the claimed elements using their distinguishing adjective, i.e., first or second, base or connector, etc.

## Summary

*Select a clear name for each element, based on the detailed specification description where given. Where a broad scope name is desired, functional names, such as "a fastener" or "means for moving . . . ," should be used.*

of reference characters is to be considered as having no effect on the scope of the claims.[13]

Although this technique may seem helpful in interpreting claims as long as the claim scope is not limited by the parenthetical numerals, it is almost never used at present, and many attorneys probably consider the practice unsafe. For example, when the claim is being interpreted for equivalents by a court, the court may still limit the scope of claim breadth due to the presence of numbers referring to drawings of an embodiment, despite the Manual's recommending (for examiners but not for judges) that the reference characters have no effect.

**Summary**

*Do not use reference characters from the drawings in claims, but it is not wrong to do so (if placed in parentheses).*

## § 23 Antecedents; Indefiniteness

The first time an element or part is mentioned, it should not be preceded by a definite article ("the") or by "said." Instead the indefinite article ("a" or "an") should be used, as in claim 1: "*a* container," "*a* base," etc.[13.1] This practice merely follows normal rules of grammar. Plural elements are not preceded by articles, as there is no plural indefinite article. Thus "containers." Sometimes an element is preceded by a numerical adjective when it is introduced in a claim, as "two containers." A "means for" clause requires no article: "means for oscillating. . . ." Note that none of these uses a definite article. When each previously identified element or part is referred to again, the definite article should be used, as "*the* container," "*the* base," or "*the* oscillating means" in claim 1; or "*the* two containers," or simply "*the* two containers." See section 16 above relating to inferential claiming.

---

13. *See also* MPEP 2173.05(s).

13.1. *See* Abtox, Inc. v. Exitron Corp., 43 U.S.P.Q.2d (BNA) 1545, 1548 (Fed. Cir. 1997), *modified on other grounds,* 46 U.S.P.Q.2d (BNA) 1735 (Fed. Cir. 1997).

be considered as having no effect on

may seem helpful in interpreting
pe is not limited by the parentheti-
r used at present, and many attor-
actice unsafe. For example, when
or equivalents by a court, the court
im breadth due to the presence of
s of an embodiment, despite the
xaminers but not for judges) that
o effect.

*from the drawings in claims, but it*
*in parentheses).*

iteness

art is mentioned, it should not be
he") or by "said." Instead the in-
uld be used, as in claim 1: "*a* con-
practice merely follows normal
s are not preceded by articles, as
. Thus "containers." Sometimes
erical adjective when it is intro-
ners." A "means for" clause re-
illating. . . ." Note that none of
each previously identified ele-
, the definite article should be
," or "*the* oscillating means" in
or simply "*the* two containers."
ferential claiming.

3 U.S.P.Q.2d (BNA) 1545, 1548 (Fed.
ds, 46 U.S.P.Q.2d (BNA) 1735 (Fed.

If the definite article is not used for each subsequent appearance of the element and if an indefinite article is used, this will suggest to the reader that a new element is being identified, rather than the previously named element, and this will cause improper double inclusion of the element.[13.2]

The word "said" is used by many practitioners rather than "the" to refer back to previously recited elements, sometimes to a previously recited anything. This practice is unobjectionable, although perhaps overly legalistic. If "saids" or "thes" are used, one should be consistent in the usage and not alternate between those words in repetitions of the same element or among different elements. (However, one often sees alternation between "said" and "the" within a claim without any apparent reason, and there is usually no objection as to this form by an Examiner at the Patent Office.) One common style is to use "said" only for the elements themselves, and "the" for everything else. The expression "the said" which one sometimes sees is a patent redundancy and should be avoided.

When referring back to an element, it must be perfectly clear which element. The claim must be consistent within itself. For example, if two different gears have been individually described in the claim, it is improper to refer back to "said gear"; refer to "said first gear," "said drive gear," etc. Similarly, if a motor has been recited, do not refer back to "said drive means," i.e., never change the name that was first given to an element. In another example, the claim recited "a handle" and then something connected to "a handle"; thus it was not clear whether the first handle was meant or a different one. Such descriptions are "indefinite." It is also improper to describe additional details of an element when referring back to that element as an antecedent; for example, if "a gear" has been recited, it would be improper to refer to "said *plastic* gear." This is also called an "indirect limitation." To introduce the "plastic" nature of the gear, use a describing clause, "the gear is plastic" or "the gear is comprised of plastic."

---

13.2  MPEP 2173.05(o); *Ex parte* Oetiker, 23 U.S.P.Q.2d (BNA) 1651, 1655 (Board of Appeals and Interferences 1992).

**§ 23**                          *Mechanics of Patent Claim Drafting*

Claim limitations are often of such length that an attempt to re-fer back to an earlier mentioned element may introduce an ambi-guity: "a handle connected to the gear, which is supported on the axis to pivot about it." To what does "which" and "it" refer, the handle, the gear, or the axis? Better would be "a handle connected to the gear, the handle is supported on the axis to pivot about the gear"—no ambiguity there. Do not hesitate to repeat the name of an element each time it appears in a clause (the handle). Avoid us-ing indefinite words to refer back (which or that) or pronouns that do not mention the name of the element (it) unless there can be no doubt which element is being indicated. Wherever there is a sec-ond element between a first mentioned element and a later word referring back, as occurred in the above handle/gear/axis example, use of an indefinite reference back should be avoided, as ambigu-ity is virtually unavoidable.

In dependent claims also, one must be careful to avoid confu-sion between elements in any parent claims (or claims) and ele-ments added by the dependent claim.

All such rejections or objections on matters of claim form are based upon claim "indefiniteness" of the claim and trace from 35 U.S.C. § 112, i.e., the subject matter has not been "particularly pointed out and distinctly claimed," meaning that the examiner cannot tell what the claim covers.[14] In *In re Miller*,[15] the court held that an "indefiniteness" rejection must be based on § 112,[16] and held that the Patent and Trademark Office could not reject the claim under section 103 (obviousness) by ignoring the alleged-ly indefinite words.[17] The *Miller* court said: "All *words* in a claim must be considered in judging the patentabilty of that claim against the prior art."

This question arises in many contexts, such as preamble limita-tions (section 56), mental steps (section 44), functional language (section 31), printed matter (section 65), and others.

---

14. *See* MPEP 706.03(d); *In re* Venezia, 189 U.S.P.Q. (BNA) 149, 151 (C.C.P.A. 1976).
15. *In re* Miller, 169 U.S.P.Q. (BNA) 597, 600 (C.C.P.A. 1971).
16. MPEP 706.02.
17. Citing *In re* Wilson, 165 U.S.P.Q. (BNA) 494 (C.C.P.A. 1970).

ι of such length that an attempt to re-
ned element may introduce an ambi-
ɔ the gear, which is supported on the
hat does "which" and "it" refer, the
Better would be "a handle connected
orted on the axis to pivot about the
ɔo not hesitate to repeat the name of
rs in a clause (the handle). Avoid us-
ack (which or that) or pronouns that
ιe element (it) unless there can be no
indicated. Wherever there is a sec-
ιentioned element and a later word
he above handle/gear/axis example,
ɔack should be avoided, as ambigu-

ne must be careful to avoid confu-
parent claims (or claims) and ele-
claim.

ions on matters of claim form are
ss" of the claim and trace from *35*
matter has not been "particularly
med," meaning that the examiner
ers.[14] In *In re Miller,*[15] the court
jection must be based on § 112,[16]
rademark Office could not reject
viousness) by ignoring the alleged-
r court said: "All *words* in a claim
z the patentabilty of that claim

ɔontexts, such as preamble limita-
(section 44), functional language
tion 65), and others.

ιnezia, 189 U.S.P.Q. (BNA) 149, *151*

ɔ97, 600 (C.C.P.A. 1971).

(BNA) 494 (C.C.P.A. 1970).

.6

*Ex parte Schaefer*[18] holds that:

> Omission of some elements of the device [the complete device described in the specification, through the use of the preamble "comprising"—Section 7] makes the claim broad, but not vague, indefinite or misdescriptive.

In other words, the court and Board are saying to the examiner: "reject broad claims on prior art, if you can find any, but not under § 112 as 'indefinite,' etc. Section 112 applies only where you cannot understand what the claim covers." See also "incomplete" claims, section 66. However, a claim that omits essentials can be rejected as incomplete under § 112. MPEP 2173.05(l) recites:

> A claim can be rejected as incomplete if it omits essential elements, steps or necessary structural cooperative relationship of elements, such omission amounting to a gap between the elements, steps or necessary structural connections. . . . Greater latitude is permissible with respect to the definition in a claim of maters not essential to novelty or operability than with respect to matters essential thereto.

**Summary**

---

*Use "a" or "an" the first time you mention an element or part in a claim, where grammatical rules dictate. Use "the" or "said" after that, when referring again to the same element or part. Make sure the claim is consistent with itself, that each "the" or "said" element has one and only one clear antecedent in the claim, and that consistent, definite phraseology is used throughout the claim. In general, make sure the claim is definite and clearly understandable as to what it covers and how it reads on the detailed description and drawing.*

---

18. *Ex parte* Schaefer, 171 U.S.P.Q. (BNA) 110 (Bd. App. 1970).