# EXHIBIT 6

# WILMER CUTLER PICKERING
## HALE AND DORR LLP

**VIA ELECTRONIC AND FIRST CLASS MAIL**

August 29, 2005

Michael K. Nutter, Esq.
Winston & Strawn
35 West Wacker Drive
Chicago, IL  60601-9703

Daniel M. Esrick

60 STATE STREET
BOSTON, MA 02109
+1 617 526 6529
+1 617 526 5000 fax
daniel.esrick@wilmerhale.com

Re:   <u>Cephalon, Inc. et al. v. Barr Laboratories, No. 05-29-JJF, U.S.D.C. Dist. Delaware</u>

Dear Mike:

I am writing to respond to your August 24 letter concerning the inadvertent production of privileged documents by Cephalon and the University of Utah Research Foundation ("UURF") to Barr.

As an initial matter, Barr apparently concedes the privileged nature of the documents in question, since Barr makes no argument to the contrary in its correspondence. Barr's contention is instead that Cephalon and UURF's production was not "inadvertent," but this is nothing more than an unpersuasive attempt to avoid Paragraph 16 of the Protective Order, which explicitly governs inadvertent production of privileged documents.

As Barr well knows, the parties entered into a protective order in this case that specifically provides that "[i]nadvertent production of documents or information subject to the attorney-client privilege, work product immunity, or any other applicable privilege or immunity shall not constitute a waiver of such privilege(s)." *See* Protective Order, ¶ 16. This provision reflects the parties' clear choice to "modify the otherwise applicable law concerning inadvertent disclosure of privileged documents." *See Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.*, 2001 WL 699850, *3 (S.D. Ind. 2001) (enforcing the "clear terms of the protective order"); *U.S. Fidelity and Guaranty Co. v. Braspetro Oil Services Co.*, 2000 WL 744369, *4 (S.D. N.Y. 2000) (protective order provision did not merely incorporate the caselaw standards governing inadvertent waiver because, if it did, the provision would have no effect); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, 1997 WL 736726, *4 (S.D. N.Y. 1997) (if the protective order provision "applied only to documents deemed inadvertently produced under governing caselaw, then the parties would have to brief that law for the court to determine even whether the provision applied to a particular situation . . . [which] would contravene the provision's purpose of protecting the parties from having to litigate inadvertent production issues"). *See also VLT Corp. v. Unitrode Corp.*, 194 F.R.D. 8, 19 (D. Mass. 2000) (enforcing non-waiver provision of protective order where producing party complied with terms of the order); *In re Southeast Banking Corp. Securities and Loan Loss Reserves Litigation*, 212 B.R. 386, 394 (S.D.Fla.1997) (same).

Michael K. Nutter, Esq.
August 29, 2005
Page 2

Moreover, even if Paragraph 16 of the Protective Order did not trump governing law regarding inadvertent production, Cephalon and the UURF's production was nonetheless "inadvertent" under the very factors set forth by Barr. First, with respect to precautions taken and diligence shown in review, as Barr is well-aware, each of the inadvertently produced documents falls in sequential Bates number order from CE 114207 – CE 114269 (with the only gaps being transmittal letters that Cephalon and the UURF have determined are not privileged). In addition, as Barr readily concedes, most of the documents were correspondence on law firm letterhead, easily identifiable as privileged. Accordingly, this suggests that the documents in question were designated privileged, set aside to be added to the privilege log, and then accidentally produced to Barr. Such accidental disclosure is "inadvertent" under Delaware law. *See Berg Electronics v. Molex, Inc.*, 875 F. Supp. 261, 263 (D. Del. 1995) (disclosure was inadvertent where documents were intended to be withheld, but were mistakenly produced during processing phase). Barr's argument is equally unpersuasive with respect to the scope of the inadvertent production, given that only 52 pages were inadvertently produced out of a production exceeding 270,000 pages to date. *Compare Cardiac Pacemakers*, 2001 WL, at *2 (absent protective order provision governing inadvertent disclosure, producing 3,500 privileged pages out of a 25,000 page production would constitute waiver); *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 292-93 (D. Mass. 2000) (waiver where nearly 4,000 privileged pages of a 70,000 page production were produced). Cephalon and the UURF also notified Barr of the inadvertent disclosure immediately when counsel was made aware of the documents during Mr. Moeller's August 12, 2005 deposition, and followed up with a letter several days later.

Finally, Barr's argument regarding "digestion" of the information in the documents is no bar to the operation of Paragraph 16 of the Protective Order. Rather than immediately return documents which it apparently knew were privileged, Barr instead not only "digest[ed]" the information contained in the documents (*See* August 24 letter from M. Nutter to D. Esrick, at 2), but sought to use many of them as exhibits during Mr. Moeller's deposition. Barr could have returned the documents to counsel for Cephalon and the UURF as soon as they were discovered, rather than "digesting" them, but did not. In any event, Paragraph 16 of the Protective Order specifically contemplates that inadvertently produced documents may be digested by a party and used at a deposition, yet still be returned later to the producing party. That is why the Order specifically gives other parties, once alerted to the existence of inadvertently produced privileged documents at a deposition, time to assert the privilege and seek the return of the documents, as Cephalon and the UURF have done here.

Please let us know immediately in writing whether Barr intends to reconsider its position. If Barr will not return the documents identified in my August 17, 2005 letter, we will file an appropriate motion with the Court within seven days of receiving notification from Barr.

Very truly yours,

Daniel M. Esrick

USIDOCS 5265560v1