# RICHARDS, LAYTON & FINGER

A PROFESSIONAL ASSOCIATION
ONE RODNEY SQUARE
920 NORTH KING STREET
WILMINGTON, DELAWARE 19801
(302) 651-7700
FAX (302) 651-7701
WWW.RLF.COM

FREDERICK L. COTTRELL, III
DIRECTOR

DIRECT DIAL NUMBER
302-651-7509
COTTRELL@RLF.COM

September 30, 2005

**VIA E-FILING**
The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

Re: *Cephalon Inc., et al v. Barr Laboratories*
C.A. 05-0029-JJF

Dear Judge Farnan:

I write pursuant to Local Rule 7.1.2(c) to address Barr's letter to the Court dated September 23, 2005 concerning the Federal Circuit's recent decision in Nystrom v. Trex Co., Inc., No. 03-1092, 2005 WL 2218632 (Fed. Cir. Sept. 14, 2005).

The Nystrom decision is readily distinguishable from this case. As Barr states, one of the issues the Federal Circuit was considering in Nystrom was whether a claim term to a "board" was limited to wood cut from a log. The Federal Circuit decided that this was so, based primarily on the use of the word "board" in the written description of the patent in suit. There, the usage of the word "board" occurred exclusively in the context of wood flooring materials. The patent stated that "the process used to cut such lumber from logs can produce inferior product on the outermost boards, often leading to scrap." Nystrom, 2005 WL 2218632 at *5 (quoting patent in suit). The Federal Circuit also found that "throughout the written description, Nystrom consistently used the term 'board' to describe wood decking material cut from a log." Id. at *6. Similarly, in the prosecution history, the word "board" was used consistently to "refer to wood decking materials cut from a log." Id.

This case is different. Here, the inventors did not use the word "mixing" exclusively to refer to dry mixing, or mixing in the absence of free liquid. As noted in Cephalon's Markman papers and at argument, the specification unequivocally shows that the word "mixing," without further limitation, simply means "combining or blending." Indeed, the inventors used the word "mixed" and "mixture" to refer to the combining or blending of molten ingredients, which are liquid:

> In the manufacture of medicated candy products by existing methods, the therapeutic agent is added to a **molten candy mass**. The resultant **mixture** is then **thoroughly mixed** to ensure proper distribution of the drug within the molten

RLF1-2929113-1

The Honorable Joseph J. Farnan, Jr.
September 30, 2005
Page 2

candy mass. The **mixture** is then **poured while still molten** and allowed to solidify into a semi-solid mass. ('737 Patent, Teran Decl. Ex. 1, Col. 3.56-62, emphasis added; see generally Cephalon's Reply Br. on Claim Constr. at 11.)

Likewise, in the prosecution history, the inventors used the word "mix" in a manner which included the mixing of liquid components:

For example, relatively insoluble components can be combined without the difficulty of attempting to *dissolve and mix* those components, thereby resulting in a composition in which the drug is delivered to the mucosal tissues for absorption therethrough. (Amendment, Oct. 27, 1988, Teran Decl. Ex. 3, at 12, emphasis added.)

Without question, in the prosecution history the inventors excluded molten methods, which involve a particular *type* of liquid mixing. They did so by explicit amendment to their claims, requiring the mixing to occur below the melting points of the drug and carbohydrate. But in so doing, the inventors never redefined the word "mixing" to mean something other than "combining or blending." And they never stated that they disclaimed *any* form of mixing where *any* so-called "free liquid" was present.

Nystrom confirms the principles of Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996) and Phillips v. AWH Corp., 415 F.3d 1303 (2005) (en banc), that words of the claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art in light of the entire intrinsic record. Nystrom, 2005 WL 2218632 at *4. Cephalon is not attempting to expand the definition of "mixing," but is giving it its ordinary and customary meaning as would be understood by the skilled artisan. As set forth *supra*, the specification and prosecution history use the words "mixing" to indicate that components are being "combined or blended" irrespective of whether they are dry or in liquid (e.g., molten) form. This is the construction proposed by Cephalon.

Furthermore, in the Nystrom Patent, the "board" of the invention is specifically described as being one which is "cut from a log" or "obtained from a log." See, e.g., U.S. Patent No. 5,474,831, Col. 2:22-23 and 2:34 (attached hereto). This is not analogous to the instant case. "Mixing" is never defined in either the specification or prosecution history of the '737 Patent as being "absent the presence of free liquid" or "without the use of free liquids." In fact, the words "free liquid(s)" never even appear in either the specification or prosecution history of the '737 Patent. Barr's proposed construction thus is not one that "stays true to the claim language and most naturally aligns with the patent's description of the invention." Nystrom, 2005 WL 2218632 at *4 (quoting Phillips, 415 F.3d at 1316).

This case is far more like Phillips than Nystrom. In Phillips, initially a divided Federal Circuit panel held, 2-1, that the claim term "baffles" should be construed to exclude any structures that extend at a 90° angle from a wall, based on "repeated" references in the specification to baffles that could deflect projectiles and the absence of a disclosure in the specification of a baffle projecting from a wall at a right angle. Phillips, 415 F.3d at 1310. But

The Honorable Joseph J. Farnan, Jr.
September 30, 2005
Page 3

the en banc Federal Circuit reversed, and held that although the specification referred at several points to an advantage of the baffles as described in the invention – namely, the deflection of projectiles – those statements did not restrict the claim term "baffles" only to those baffles that served this advantage. Although "the invention envisions baffles that serve that function, it does not imply that in order to qualify as baffles within the meaning of the claims, the internal support structures must serve the projectile-deflecting function in all the embodiments of all the claims." Id. at 1325.

Likewise, although the invention of the '737 Patent clearly envisions mixing dry powders as an advantageous embodiment, it does not imply that in order to qualify as "mixing" within the meaning of the claims, no free liquid may be present. So long as the process of mixing is not molten, because additional claim language requires that the mixing be conducted at a temperature below the melting points of the drug and the carbohydrate, the claim limitation "mixing" is satisfied.

Respectfully,

Frederick L. Cottrell, III

FLC,III/afg

Attachment
cc: Clerk of the Court (via hand delivery and e-filing)
    David B. Bassett, Esquire (via e-mail)
    Josy W. Ingersoll, Esquire (via e-mail and e-filing)
    George C. Lombardi, Esquire (via e-mail)
    Bradley C. Graveline, Esquire (via e-mail)

RLF1-2929113-1