# YOUNG CONAWAY STARGATT & TAYLOR, LLP

JOSY W. INGERSOLL (NO. 1088)
DIRECT DIAL: 302-571-6672
DIRECT FAX: 302-576-3301
jingersoll@ycst.com

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801
P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

October 4, 2005

**BY E-FILE**

The Honorable Joseph J. Farnan, Jr.
United States District Court
844 King Street
Wilmington, DE 19801

    Re:    Cephalon, Inc., et al. v. Barr Laboratories, Inc.
              Civil Action No. 05-29-JJF

Dear Judge Farnan:

       I write in response to Plaintiffs' September 30th letter concerning the Federal Circuit's recent decision in *Nystrom v. Trex Co., Inc.*, No. 03-1092, 2005 WL 2218632 (Fed. Cir. Sept. 14, 2005). Contrary to Plaintiffs' contention, *Nystrom* is precisely on point and controlling. Plaintiffs cannot escape from the fact that the specification and prosecution history repeatedly describe the invention exclusively as drug containing lollipops made by mixing dry powders. *Nystrom*, as well as *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), hold that these descriptions must be considered in construing the claims. Plaintiffs' efforts to avoid these decisions are unavailing.

       First, Plaintiffs' argument that "'mixing', without further limitation, simply means 'combining or blending'", ignores the fact that the '737 patent claims mixing of specified materials in a dry state. Independent method claims 1 and 18 require that the drug-containing lollipop be made by "mixing *the* drug and *the* carbohydrate material." (Emphasis added). As Barr explained in its *Markman* brief, the claims, specification and prosecution history all teach that the drug and the carbohydrate material must be in dry powdered form during the mixing step. By focusing on the single word "mixing", rather than the words "mixing the drug and the carbohydrate material", Plaintiffs attempt to segregate this term and define it out of the context of the '737 patent and its prosecution history. The Federal Circuit explicitly rejected this approach in *Phillips* and *Nystrom*.

       Second, Plaintiffs' statement that the inventors of the '737 patent "did not use the word 'mixing' exclusively to refer to dry mixing" is misleading. In the portions of the '737 patent specification and prosecution history that Plaintiffs rely upon, the inventors were

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Joseph J. Farnan, Jr.
October 4, 2005
Page 2

*distinguishing* their invention from existing wet mixing techniques. Far from *claiming* wet mixing, the inventors were specifically *disclaiming* the use of liquid during the mixing step. The inventors were not providing notice to the public that they intended the term *mixing the drug and the carbohydrate material* to have a broader meaning than mixing dry powders, as required by *Nystrom*. 2005 WL 2218632, at *7.

Third, Plaintiffs' assertion that "'mixing' is never defined in either the specification or prosecution history of the '737 patent as being 'absent the presence of free liquid'" is refuted by their expert. The specification and prosecution history use the terms "dry", "powdered", and "solid powders" in connection with the mixing step not less than eight times. Plaintiffs' own expert, Dr. Lynn Van Campen, admitted that "dry" means "absent the presence of free liquid." Van Campen Dep. at 134:22-135:3 (attached). Thus, as required by *Nystrom*, Barr's proposed claim construction "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Nystrom*, 2005 WL 2218632, at *4 (quoting *Phillips*, 415 F.3d at 1316). Plaintiffs' proposed construction, which ignores the repeated references to dry mixing, does not.

Finally, Plaintiffs' contention that *Phillips* supports their proposed, broad claim construction does not withstand scrutiny. The *Phillips* court held that the term "baffles" in the independent claims should not be limited to exclude baffles oriented at 90 degrees, even though no baffles oriented at 90 degrees were depicted in the examples. *Phillips*, 415 F.3d at 1327. The Federal Circuit concluded that a broader construction (*i.e.*, one including baffles oriented at 90 degrees) was reasonable because several dependent claims required the "baffles" to be at angles other than 90 degrees. *Id.* at 1324-25. Thus, the Federal Circuit construed the independent claim to be broader than the narrowing dependent claims. *Id.* at 1325, 1327. Such is not the case here. The inventors did not include any dependent claims directed towards dry mixing. Thus, *Phillips* does not even remotely support Plaintiffs' attempt to broaden the scope of the asserted claims to include wet mixing techniques.

Both *Phillips* and *Nystrom* squarely support Barr's proposed claim construction. *Phillips* holds that claims must be construed in the context of the specification and the prosecution history – not in the abstract. *Nystrom* holds that, when inventors use a claim term in a limited manner throughout the specification and prosecution history, the claims will be given this limited interpretation unless the inventors provide clear notice to the public that a broader meaning is claimed. Barr's proposed claim construction comports with these directives; Plaintiffs' proposed claim construction does not. There is simply no language in the claims, the specification, or the prosecution history of the '737 patent that indicates that the inventors

YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Honorable Joseph J. Farnan, Jr.
October 4, 2005
Page 3

intended to claim anything other than a dry mixing process. In accordance with *Phillips* and *Nystrom,* the Court should construe the disputed claims to mean dry mixing methods and products made via the claimed dry mixing methods.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)

JWI:cg
Enclosure

cc: Clerk of the Court (w/enc. - by hand delivery and e-filing)
    Frederick L. Cottrell, III, Esquire (w/enc. - by e-filing and e-mail)
    David B. Bassett, Esquire (w/enc. - by e-mail)
    George C. Lombardi, Esquire (w/enc. - by e-mail)
    Bradley C. Graveline, Esquire (w/enc. - by e-mail)

Page 1

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE
----------------------------------------------------------------

CEPHALON, INC., and UNIVERSITY
OF UTAH RESEARCH FOUNDATION,

       Plaintiffs,

  vs.               Case No. 05-20 (JJF)

BARR LABORATORIES, INC.,

       Defendant.

----------------------------------------------------------------


Deposition of DR. LYNN VAN CAMPEN

Friday, September 9th, 2005


8:54 a.m.

at

Sheraton Hotel
706 John Nolen Drive
Madison, Wisconsin




ELLEN GRAUER COURT REPORTING CO. LLC
126 East 56th Street, Fifth Floor
New York, New York 10022
212-750-6434
REF: 78559

d9de8cd9-f36e-4787-b6b9-47dfcf1cd463

Page 134

1  BY MR. NUTTER:
2  Q    You know what, I'm going to strike that question
3       because I don't think it's a fair question to you.
4              In Dr. Block's declaration, he
5       defines "in a substantially powdered form" to mean
6       "largely in the form of fine particles absent the
7       presence of free liquid."
8              Do you recall that?
9  A    Yes.
10 Q    You did not object to that definition in your
11      declaration; is that correct?
12            MR. TERAN:  I object.
13            THE WITNESS:  I think that's true.
14 BY MR. NUTTER:
15 Q    So you accept that the definition of "in a
16      substantially powdered form" to mean "largely in
17      the form of fine particles absent the presence of
18      free liquid"?
19            MR. TERAN:  I object.
20            THE WITNESS:  Yes.
21 BY MR. NUTTER:
22 Q    Now, isn't the term "absent the presence of free
23      liquid" just another way of -- of -- strike that.
24            Isn't the term "absent the presence
25      of free liquid" a more specific way of defining the

1  word "dry"?
2          MR. TERAN: I object.
3          THE WITNESS: Yes.
4  BY MR. NUTTER:
5  Q  Now, you note in paragraph 29 that the term "free
6     liquid" does not appear anywhere in the '737
7     patent. Why is that important to you?
8  A  Well, it neither includes or excludes explicitly
9     the use of "free liquid" as in the addition of a
10    granulation medium.
11 Q  But don't you think if the applicants intended to
12    include it, they would have actually put it
13    somewhere in their patent?
14         MR. TERAN: I object. Calls for
15    speculation.
16         THE WITNESS: More likely than not. But
17    if they were intending to exclude it, then they
18    might not have specified dry in some cases and not
19    in others.
20 BY MR. NUTTER:
21 Q  I mean, would one of ordinary skill in the art base
22    their interpretation of the claims on what is
23    included in the patent, or should they be required
24    to consider everything that may possibly have been
25    excluded from the patent?